Filed 9/30/24  P. v. Mejia CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUAN MEJIA,<br><br>    Defendant and Appellant. | B324606<br><br>(Los Angeles County<br>Super. Ct. No. SA050401) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Michael E. Pastor, Judge.  Affirmed.
        Spolin & Dukes, Aaron Spolin, Caitlin Dukes and Jeremy Cutcher, for Defendant and Appellant.
        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael C. Keller and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Juan Mejia appeals from a postjudgment order denying his petition for resentencing under Penal Code former section 1170.95 (now section 1172.6).[1]  In 2005 a jury convicted Juan Mejia of first degree murder.  In 2021 Mejia petitioned for resentencing, seeking relief from his conviction.  Following briefing and an evidentiary hearing, the superior court denied the petition, finding the People proved beyond a reasonable doubt that Mejia was guilty of first degree murder under a direct aiding and abetting theory.

On appeal, Mejia contends the superior court applied an incorrect legal standard because the court, although stating it concluded beyond a reasonable doubt that Mejia was a direct aider and abettor, also found Mejia "could probably and legally" be convicted of first degree murder.  Mejia also contends his attorney's failure to prepare for Mejia to testify and his legal advice not to testify constituted ineffective assistance of counsel. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Murder and Mejia's Convictions*

In 2001 Heriberto Salinas, a Westside Criminals gang member known as "Puppet," was killed at the intersection of Ramsgate and West Manchester Avenues in Los Angeles in territory claimed by the Pozers gang, a rival of the Westside Criminals gang.  In 2003 Mejia, an admitted Westside Criminals member, was riding in the front passenger seat of a car driven by Julio Hernandez when it approached the Ramsgate-West

---

[1]    Further statutory references are to the Penal Code.

2

Manchester intersection; Octavio Vizcaino was sitting in the right rear seat.  At the intersection, Hernandez's car pulled next to a car driven by Anthony Palmer, an associate of the Pozers, and shots were fired into Palmer's car.  As Hernandez's car sped away, Palmer's car crashed into a fence.  According to one eyewitness, all three men in Hernandez's car were smiling as they left the scene.  Palmer died from a gunshot wound to the head.  (*People v. Mejia* (July 31, 2007, B192374) [nonpub. opn.] (*Mejia I*).)

Los Angeles Police Officer Ezequiel Barraza stopped Hernandez's car within minutes of the shooting.  A semi-automatic handgun was found in the armrest between the rear seats.  Police found five spent shell casing and bullet fragments on the street where the shooting occurred; ballistics tests established the casings and bullets had been fired from the gun found in Hernandez's car.  An eyewitness testified she saw the right front passenger extend his arm outside the car, holding a gun, but she could not identify him.  No fingerprints were recovered from the gun, and gunshot residue tests performed on Mejia and Hernandez were negative.  A gang expert from the Los Angeles Police Department testified Mejia had one tattoo that read "Westside Criminals, 99th Street" and another that read "Rest in Peace Puppet," referring to the 2001 killing of Salinas.  The officer who had booked Mejia into jail testified Mejia told him, "I'm going to get life."

Mejia's theory at trial was that Vizcaino, who Mejia claimed was not a gang member, fired into Palmer's car from the back seat and the shooting was not a gang retaliation for the killing of Puppet, but rather, an expression of "road rage." Eyewitnesses had testified Palmer's car was driving very slowly;

3

Palmer had marijuana and valium in his blood at the time of his death; and another eyewitness had testified at the preliminary hearing (she was unavailable at trial) that she saw the right rear passenger reach over the front passenger seat with what appeared to be a gun in his hand. In an interview with police after his arrest, Mejia stated he did not know there was a gun in the car and never touched it.

The trial court instructed the jury on direct aiding and abetting with CALJIC Nos. 3.00 and 3.01. The court also instructed the jury with CALJIC No 3.02 on the natural and probable consequences doctrine.

The jury found Mejia guilty of first degree murder and shooting at an occupied vehicle and found true the drive-by shooting special circumstance allegation. The jury found the allegations Mejia had personally discharged a firearm and personally inflicted great bodily injury to be not true, but it found true the allegations a principal used a firearm in the commission of the two crimes. The trial court sentenced Mejia for special-circumstance murder to life imprisonment without the possibility of parole, plus one year for the gun enhancement; the court imposed and stayed under section 654 the middle term of five years for shooting at an occupied vehicle, plus one year for the gun enhancement.

B.  *Petition for Resentencing, Evidentiary Hearing, and Denial of Petition*

On April 28, 2021 Mejia filed a second petition for resentencing seeking to vacate his murder conviction and be resentenced in accordance with recent statutory changes relating to felony murder and the natural and probable consequences

4

doctrine.[2]  Mejia argued the back-seat passenger was the shooter and Mejia was found guilty under the natural and probable consequences doctrine.  The People filed a response to the petition, and on July 6, 2021 the superior court issued an order to show cause.[3]

After additional briefing from the parties, on September 19, 2022 the superior court held an evidentiary hearing.  At the hearing, the prosecutor introduced the transcript from Mejia's 2005 trial and our opinion in *Mejia I, supra*, B192374 (for the procedural history of the case).  The prosecutor acknowledged there was conflicting evidence at trial as to whether the shooter was in the front seat (Mejia) or the back seat (Vizcaino).  She argued Mejia was guilty as a direct aider and abettor of the murder as shown by the fact Mejia and the other occupants of Hernandez's vehicle were driving in rival territory and pulled up next to Palmer's vehicle, and the shooter fired at close range at Palmer.  Further, all three occupants of Hernandez's vehicle were smiling after the shooting.

Defense counsel pointed out that the People's witness testified the shooter was in the rear passenger seat and the case was not charged as a gang case.  Further, the murder of Puppet took place two years earlier.  Defense counsel argued, similar to trial, that the incident occurred as a result of road rage.

---

[2]     Mejia's first petition for resentencing was summarily denied at the prima facie review stage on October 2, 2019.  The record does not explain why a second petition was filed and considered.

[3]     Judge Lance Ito presided over the trial.  Following Judge Ito's retirement, Judge Michael E. Pastor issued the order to show cause and presided over the evidentiary hearing.

Moreover, there was no showing that Mejia had the intent to kill, and the jury instructions on the special-circumstance allegation did not require Mejia (as opposed to the "perpetrator") to have the intent to kill.

At the conclusion of the hearing, the superior court denied Mejia's petition for resentencing, finding there was insufficient evidence "beyond a reasonable doubt that Mr. Mejia was the actual killer," but finding "beyond a reasonable doubt that Mr. Mejia had the specific intent to kill as a direct aider and abettor."  The court explained, "The Court concludes that in this case, beyond a reasonable doubt and all of my findings are beyond a reasonable doubt unless otherwise indicated when it comes to the requirements the People have to prove that *the court is satisfied beyond a reasonable doubt and concludes that Mr. Mejia was a direct aider and abettor of the drive-by shooting.*"

The court continued, "His actus reus was his involvement, by virtue of his proclaiming his allegiance to Puppet, who, based upon the evidence in this case, is all based upon vengeance and revenge and gang rivalry, his not mere presence in the car but more than mere presence.  His being seated in the front row and having a gun pointed directly through him or over him, he is allowing and enabling that conduct to occur.  It's not a surprise. There's no effort to prevent it.  Quite the contrary.

"Mr. Mejia joins in the laughter of the occupants, speeds away with the occupants, is found minutes later by an LAPD officer.  The weapon is still in the car, albeit there's no DNA or fingerprint evidence or GSR connecting it to a specific individual.

"And Mr. Mejia's comment [that he would be sentenced to life], which the jury as fact finder and the court as fact finder can either disregard, by saying Mr. Mejia had already been told about

6

that possibility during an interview or anyone's statement of Mr. Mejia's realization. I conclude it's a genuine statement of Mr. Mejia's realization that he knew and does know about the nature of his involvement.

"And [Mejia's] mens rea based upon the totality of the evidence and the nature of circumstantial evidence establishes beyond a reasonable doubt that Mr. Mejia had the specific intent to kill as a direct aider and abettor . . . . So the Court is going to find that Mr. Mejia *could probably and legally and would be* convicted of a first degree drive-by murder and premeditated first degree murder under existing law, and that the special circumstance allegation would be found true beyond a reasonable doubt. The court further goes on to conclude that based upon the evidence presented, and based upon *Gentile* and *Powell,* Mr. Mejia *could and would be convicted* of second degree aiding and abetting murder based upon willful disregard for human life, reckless disregard under the requirements of second degree implied malice direct aiding and abetting.

"Taking into account all of the analyses, the court respectfully declines any defense motion for resentencing and wishes Mr. Mejia and counsel good luck." (Italics added.)

## DISCUSSION

A. *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v.*

7

*Gentile* (2020) 10 Cal.5th 830, 842-843, 847-848 (*Gentile*); see *People v. Reyes* (2023) 14 Cal.5th 981, 984 (*Reyes*).) Section 188, subdivision (a)(3), now prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule as set forth in section 189, subdivision (e). (*Reyes*, at p. 986; *Gentile*, at pp. 842-843.) Section 189, subdivision (e), now requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant, with the intent to kill, assisted in the commission of murder in the first degree (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life as described in section 190.2, subdivision (d) (the felony-murder special-circumstance provision) (§ 189, subd. (e)(3)). (See *Strong*, at p. 708.) Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, expanded the scope of potential relief to apply Senate Bill 1437's ameliorative changes to individuals convicted of attempted murder and voluntary manslaughter. (See § 1172.6, subd. (a).)

Senate Bill 1437 also provided a procedure (now codified in section 1172.6) for an individual convicted of felony murder or murder under the natural and probable consequences theory or other theory under which malice is imputed to a person based solely on that person's participation in a crime to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if the individual could not have been convicted of murder under Senate Bill 1437's changes to

8

sections 188 and 189.  (*People v. Lewis, supra*, 11 Cal.5th at
p. 959; *Gentile, supra*, 10 Cal.5th at p. 847.)

If the section 1172.6 petition contains all the required
information, including a declaration by the petitioner that he or
she is eligible for relief based on the requirements of
subdivision (a), the sentencing court must appoint counsel to
represent the petitioner upon his or her request pursuant to
section 1172.6, subdivision (b)(3).  Where a petitioner makes the
requisite prima facie showing the petitioner falls within the
provisions of section 1172.6 and is entitled to relief, the court
must issue an order to show cause and hold an evidentiary
hearing to determine whether to vacate the murder, attempted
murder, or manslaughter conviction and resentence the
petitioner on any remaining counts.  (§ 1172.6, subds. (c) &
(d)(1).)

Section 1172.6, subdivision (d)(3), provides that at the
evidentiary hearing, "the burden of proof shall be on the
prosecution to prove, beyond a reasonable doubt, that the
petitioner is guilty of murder or attempted murder under
California law as amended by the changes to Section 188 or 189
made effective January 1, 2019.  The admission of evidence in the
hearing shall be governed by the Evidence Code, except that the
court may consider evidence previously admitted at any prior
hearing or trial that is admissible under current law, including
witness testimony, stipulated evidence, and matters judicially
noticed."  Further, "[t]he prosecutor and the petitioner may also
offer new or additional evidence to meet their respective
burdens."  (§ 1172.6, subd. (d)(3).)

We review the superior court's decision to deny the petition
after an evidentiary hearing for substantial evidence, provided

9

the court understood the elements of the offense and applied the proper standard and burden of proof. (*Reyes, supra*, 14 Cal.5th at p. 988; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) "[W]here there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*Reyes*, at p. 988.)

B.      *The Superior Court Applied the Correct Legal Standard, and Substantial Evidence Supports Its Findings*

As discussed, the superior court found Mejia was not the actual shooter, but instead was guilty of murder based on a direct aiding and abetting theory. Moreover, the court held that "all of [its] findings are beyond a reasonable doubt unless otherwise indicated" and "the court is satisfied beyond a reasonable doubt and concludes that Mr. Mejia was a direct aider and abettor of the drive-by shooting." Mejia contends that, notwithstanding the court's statement that it was making its findings "beyond a reasonable doubt," the court applied an incorrect standard by later stating "Mejia could probably and legally and would be convicted of a first degree drive-by murder and premeditated first degree murder under existing law." Mejia's contention lacks merit.

As a threshold matter, the parties' briefing in the superior court stated the prosecution needed to prove its case at the evidentiary hearing beyond a reasonable doubt. Mejia's supplemental brief filed after the court issued its order to show cause argued that at the evidentiary hearing "[t]he prosecutor must prove beyond a reasonable doubt the elements of first- or second-degree murder under the current law." (Capitalization

10

and underlining omitted.)  Mejia further argued "the People must convince the trial court, as an independent trier of fact, that the petitioner is guilty of murder on a still-valid theory beyond a reasonable doubt."  (Boldface omitted.)  The People's supplemental evidentiary hearing brief likewise stated that the Legislature in section 1170.95, subdivision (d), "affirmed that the proper burden of proof at a resentencing hearing is proof beyond a reasonable doubt."

Moreover, the superior court stated at the outset of its oral ruling that all its findings were beyond a reasonable doubt unless otherwise stated, and further, that it had concluded beyond a reasonable doubt that Mejia was a direct aider and abettor of the shooting.  We recognize the court was imprecise in its later statement that Mejia "could probably" and "would be convicted," that is, by a jury, under existing law of premeditated first degree murder.  The court also stated that Mejia "could and would be convicted" of second degree implied malice direct aiding and abetting.  In making its findings, the court did not, however, at any time state that its findings were under any standard other than beyond a reasonable doubt.  Indeed, after reciting the facts supporting the murder conviction, the court found "beyond a reasonable doubt that Mr. Mejia had the specific intent to kill as a direct aider and abettor."  In addition, in making its finding, the court relied on *Gentile, supra*, 10 Cal.5th at page 853, which quoted section 1170.95, subdivision (d)(3)'s requirement that at the evidentiary hearing "the prosecution must 'prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'"

11

As the Supreme Court explained in *People v. Curiel* (2023) 15 Cal.5th 433, 466-467, "In general, to establish liability for murder under the theory of direct aiding and abetting, 'the prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission' [Citation.]  In addition, . . . an aider and abettor may be liable for murder under a theory of implied malice where the aider and abettor aids in the commission of a life-endangering act, with 'knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.'  [Citation.]  'Thus, proof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea'—which here includes knowledge that the direct perpetrator intends to commit the crime or life-endangering act, 'and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime.'"  (See § 189, subd. (e)(2) [an aider and abettor is liable for murder if "the person was not the actual killer, but, with the intent to kill, aided, abetted, . . . or assisted the actual killer in the commission of murder in the first degree"]; *People v. Strong, supra*, 13 Cal.5th at p. 708 ["section 189, as amended, now limits liability . . . [to actual killers and to] those who, 'with the intent to kill,' aid or abet 'the actual killer in the commission of murder in the first degree'"].)

Substantial evidence supports the superior court's findings beyond a reasonable doubt that Mejia had the specific intent to kill as a direct aider and abettor, and specifically, he had the requisite actus reus and mens rea. With respect to actus reus (Mejia's conduct to assist the shooter in the commission of the killing), as the superior court found, Mejia proclaimed his allegiance to Puppet (by his tattoo stating "Rest in Peace Puppet"); Puppet's killing resulted from vengeance and gang rivalry; Mejia was seated in the front row of the car; and Mejia "allow[ed] and enable[ed]" a gun to be pointed from the back seat "directly through him or over him" to shoot Palmer.

Substantial evidence likewise supports the superior court's finding Mejia acted with the required mens rea (his intent to kill or knowledge the shooter intended to kill), as shown by Mejia's conduct during the shooting; his laughing with the other occupants of the car after the shooting; speeding away with the other occupants; and admitting to the police officer that he would be sentenced to a life term, thereby showing his awareness of the nature of his involvement in the killing.

C. *Mejia Has Not Shown Ineffective Assistance of Counsel*
   1. *Mejia's waiver of his right to testify*

At the evidentiary hearing, following argument of counsel, the superior court advised Mejia of his right to testify. The court inquired of Mejia: "Do you want to testify or not?" Mejia responded, "Yes." Mejia's attorney added, "Well, then I guess that's a surprise to me." At that point Mejia spoke with his attorney, and then his attorney stated to the court, "He is going to waive his right to testify and rely on the record." The court proceeded to explain to Mejia his right not to testify, in addition

13

to his "right to testify if that's what you want to do." The court added, "And if you want to testify, no one is going to preclude you from testifying, not the prosecution, not your attorney . . . and not me, because that's your personal decision. You can talk with your attorney about advice, but ultimately it's your personal decision. Do you understand that?" Mejia responded, "Yes, I do."

The superior court confirmed with Mejia that he understood the advisement, and after Mejia responded that he did, Mejia and his attorney conferred further. The court then inquired whether Mejia wished to testify, and Mejia answered, "I wish not to testify." The court asked Mejia whether he understood his rights, was making the decision not to testify with his "eyes wide open," and "underst[ood] that anybody and everybody can give advice but on this issue you're the decision maker." Mejia responded in the affirmative, and Mejia's attorney stated he believed his client understood the choice and made a knowing and intelligent decision. The court found Mejia had given a knowing, intelligent, understanding, express, and explicit waiver of his right to testify.

2.      *Mejia was not denied effective assistance of counsel*

Mejia contends his attorney was ineffective because he was not prepared for Mejia to testify and he gave advice to Mejia not to testify. Mejia has not shown his attorney was ineffective.

As the Supreme Court held in *People v. Delgadillo* (2022) 14 Cal.5th 216, 227, there is no constitutional right to counsel under section 1172.6, subdivision (c), and "the right to counsel at that point in the proceedings is purely statutory." Moreover, Mejia has not shown his counsel was ineffective. He argues his attorney "was taken by surprise after the prosecution rested its

14

case" because the attorney did not realize he could present evidence at the hearing.  Mejia points to his attorney's response to the court's question whether he intended to "present[] any" (presumably evidence), to which the attorney stated, "Oh, I should do that."  Further, after Mejia initially stated he wanted to testify, his attorney responded, "I guess that's a surprise to me."  But it is not clear from the record why Mejia's attorney was surprised—it is speculation that he did not realize Mejia had a right to testify or that he could present evidence.  It may well be that Mejia and his attorney had discussed whether Mejia would testify, and Mejia previously indicated he did not want to testify.  Likewise, the record does not indicate what Mejia's attorney meant when he said he "should do that," which could have referred to taking a waiver of Mejia's right to testify (which the court proceeded to do).

Mejia also points to "counsel's advice" as being inadequate, but the record does not reflect what that advice was—to testify or not to testify.  As the superior court advised Mejia, it was Mejia's choice whether to testify, regardless of what his attorney, the court, or the prosecutor said.  Mejia confirmed that he understood this, and he repeated that he did not wish to testify.  Under these circumstances, we cannot say either that Mejia's attorney was not prepared for the evidentiary hearing or that he provided inadequate advice.

## DISPOSITION

The order denying the petition for resentencing is affirmed.


                                    FEUER, J.

We concur:


        MARTINEZ, P. J.


        SEGAL, J.